UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22878-CIV-ALTONAGA/Reid

TONYA MOORE,

    Plaintiff,
v.

UNIVERSITY OF MIAMI,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, University of Miami's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") [ECF No. 17]. *Pro se* Plaintiff, Tonya Moore filed a Response [ECF No. 24], to which Defendant filed a Reply [ECF No. 25]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

**I. BACKGROUND**

This action arises from Defendant's termination of Plaintiff's 16-year employment as a registered nurse and respiratory therapist. (*See* SAC [ECF No. 12] ¶¶ 29, 52, 91, 93).[1] In 2024, Defendant fired Plaintiff — an African American woman — and two other African American nurses for failing to identify a dime-sized injury on a patient during a routine skin check. (*See id.* ¶¶ 28, 31–36, 90, 94–98). Plaintiff states that Defendant's reasoning for terminating her employment was pretextual, and nurses outside of protected classes failed to identify injuries on other patients without facing discipline. (*See id.* ¶¶ 37–39, 43, 45, 99–101, 105, 107). Instead,

---

[1] The Second Amended Complaint improperly numbers 12 paragraphs in Counts III and VII. (*See* SAC 6–7, 11–12). When referencing and citing these individual paragraphs, labeled out of numerical order, the Court does so by using both the page and incorrect paragraph number. (*See, e.g., id.* ¶ 6:59).

she asserts that Defendant fired her because of her race, national origin, and in retaliation for reports she made to management and human resources. (*See id.* ¶¶ 43–45, 52–56, 88, 105–06, 116–18, 146).

For example, Plaintiff faced ridicule from her coworkers and termination after she filed complaints that the Hospital failed to properly treat a patient with high potassium, leading to the patient's death. (*See id.* ¶¶ 47–48, 52–54, 6:59, 65–73, 109–10, 11:59, 127–30). She faced similar ire after she complained to management and human resources that the Hospital would frequently see patients without proper medical documentation. (*See id.* ¶¶ 49–50, 64, 110–13, 126–35). Additionally, upper management would purposefully exclude her by conducting meetings in Spanish, knowing she did not speak the language. (*See id.* ¶¶ 78–81).

These incidents led Plaintiff to dual-file two Charges of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"). (*See id.* ¶¶ 40, 87, 102, 145; *see also* Mot. 5–6; Mot., Ex. 2, Charge of Discrimination 1 [ECF No.17-1] 78–80; Mot., Ex. 4, Charge of Discrimination 2 [ECF No. 17-1] 87–88).[2] Then, on July 29, 2024, Plaintiff filed an initial Complaint [ECF No. 1] against Defendant, which the Court dismissed as a shotgun pleading with leave to amend. (*See* July 31, 2024 Order [ECF No. 5]). Plaintiff filed a First Amended Complaint [ECF No. 7], and three weeks later filed the present Second Amended Complaint without seeking leave of court to do so.

Plaintiff brings eight claims against Defendant under the Florida Civil Rights Act of 1992, Section 760.01 *et seq.*, Florida Statutes ("FCRA") and Title VII of the Civil Rights Act of 1964,

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

42 U.S.C. section 2000e *et seq.* ("Title VII").³ (*See generally* SAC). She states that Defendant wrongfully discriminated against her based on her race and national origin, as loosely referenced in her First Charge. (*See id.* ¶¶ 28–45, 77–107, 139–47 (Counts I, IV, V, and VIII); Charge of Discrimination 1, 78–80). Plaintiff also asserts she was subjected to retaliation and a hostile work environment following her reports regarding the Hospital's mismanagement and failure to provide proper care, as loosely referenced in her Second Charge. (*See* SAC ¶¶ 46–76, 108–38 (Counts II, III, VI, and VII); Charge of Discrimination 2, 87–88).

Defendant moves to dismiss all of Plaintiff's claims. (*See generally* Mot.). Defendant requests that the Court dismiss the Second Amended Complaint, arguing that, like the original Complaint, it constitutes a shotgun pleading and should be dismissed under Federal Rule of Civil Procedure 41(b) because Plaintiff violated the July 31, 2024 Order. (*See id.* 12–14, 20; *see also* July 31, 2024 Order). Defendant asserts Plaintiff did not exhaust her administrative remedies or follow her collective bargaining agreement's ("CBA['s]") grievance procedures,⁴ requiring dismissal under Federal Rule of Civil Procedure 12(b)(1). (*See* Mot. 7–12). Finally, Defendant contends that Plaintiff fails to state any plausible claim for relief, relying on Federal Rule of Civil Procedure 12(b)(6). (*See* Mot. 14–20).

---

³ Plaintiff duplicates her retaliation and hostile work environment claims. (*See* SAC ¶¶ 46–76, 108–38). Counts II and VI (retaliation) are identical to each other, as are Counts III and VII (hostile work environment), and all are brought under Title VII. (*See id.* ¶¶ 46–76. 108–38). The Court, like Defendant, construes Counts VI and VII as brought under the FCRA. (*See* Mot. 2).

⁴ In support of its argument that Plaintiff failed to exhaust her union remedies, Defendant submits a Collective Bargaining Agreement ("CBA") that it contends governed Plaintiff's employment, along with a declaration from one of its employees explaining Plaintiff's purported failure to follow the prescribed grievance process. (*See* Mot., Ex. 1, CBA [ECF No. 1-1] 7–76; Mot., Ex. A, Pacheco Decl. [ECF No. 1-1] 1–5).

## II.  LEGAL STANDARDS

***Rule 41(b).***  A district court is authorized, on a defendant's motion, to dismiss an action for failure to obey a court order.  *See* Fed. R. Civ. P. 41(b).  The court's power to dismiss is an inherent aspect of its authority to enforce its orders and ensure the prompt disposition of lawsuits. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962) (citations omitted); *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983) (citations omitted).  Dismissal under Rule 41(b) is only appropriate where a party engages in a clear pattern of delay or willful contempt and the court finds that lesser sanctions will not suffice.  *See Collins v. Lake Helen, L.P.*, 249 F. App'x 116, 120 (11th Cir. 2007) (citations omitted).

***Rule 12(b)(1).***  "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  It is presumed that a federal court lacks jurisdiction in a case until the party asserting a claim demonstrates the court has jurisdiction over the subject matter.  *See id.* (citations omitted).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be either facial or factual.  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (citations omitted).  Where a party raises a factual attack, as Defendant does here (*see* Mot. 3 n.2, 3–5, 7–9), it "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citation omitted).  The party asserting a claim bears the burden of proving that jurisdiction exists.  *See id.*

***Rule 12(b)(6).***  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

4

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

### III. DISCUSSION

#### A. Shotgun Pleading

Defendant argues the Court should dismiss the Second Amended Complaint because Plaintiff violated the Court's instructions and once more filed a shotgun pleading. (*See* Mot. 20). As previously explained (*see* July 31, 2024 Order), "[c]omplaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (alteration added). A complaint should put a defendant on notice as to the claims against it and how each claim is connected to the complaint's factual allegations. *See Embree v. Wyndham Worldwide Corp.*, 779

F. App'x 658, 663–64 (11th Cir. 2019).

The Court disagrees that the Second Amended Complaint suffers from the same deficiency as Plaintiff's Complaint; unlike the earlier pleading, the Second Amended Complaint incorporates specific factual allegations to support its claims. (*See* Mot. 12–13, 20; *see generally* SAC). In this instance, Plaintiff reasserts multiple facts *within the Counts* themselves to support each claim. (*Compare* SAC *with* Compl.). Although the pleading is not a model of clarity, the Second Amended Complaint does not fit into any of the four types of shotgun pleadings the Eleventh Circuit has identified, contrary to Defendant's position. *See Weiland*, 792 F.3d at 1321–23; (*see also* Resp. 7). And while Plaintiff does not "incorporate by reference" paragraphs from her factual allegations into the Counts, as is customary, she reiterates and rephrases many of those allegations within each of the Counts. (*See, e.g.*, SAC ¶¶ 18, 32–36 (providing more factual detail regarding patient who Plaintiff conducted a skin exam for)).

As such, the Second Amended Complaint does not make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief[,]" and Defendant demonstrates its understanding of the relevant facts connected to each claim throughout its Motion. *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996) (citation omitted; alteration added); *see also Charles v. GEO Grp. Inc.*, No. 22-13891, 2024 WL 1619911, at *3 (11th Cir. Apr. 15, 2024) (finding the district court erred in dismissing a complaint that, despite pleading deficiencies, still provided adequate notice of claims against defendants); *Pouyeh v. Pub. Health Tr. of Jackson Health Sys.*, 832 F. App'x 616, 622–23 (11th Cir. 2020) (refusing to label a complaint a "shotgun pleading" for similar reasons); (*see generally* Mot.). As Plaintiff has not violated a prior Order

6

(*see* July 31, 2024 Order; SAC), the Court will not dismiss the Second Amended Complaint on this basis.

### B. Exhaustion of Remedies

*CBA Exhaustion.* Defendant further argues that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction because she failed to properly exhaust her union grievances by filing a formal, written complaint with Defendant or demanding arbitration. (*See* Mot. 3 n.2, 3–5, 7–9). Exhaustion of administrative remedies such as union grievances is generally considered a condition precedent to filing claims — not a jurisdictional bar — and a plaintiff's failure to fulfill a condition precedent is an affirmative defense.[5] *See Liu v. Univ. of Miami*, 138 F. Supp. 3d 1360, 1369 (S.D. Fla. 2015) ("As a condition precedent to filing suit, a plaintiff must first exhaust her administrative remedies[.]" (alteration added; citation omitted)); *see also Whatley v. Smith*, 898 F.3d 1072, 1082 (11th Cir. 2018) ("Failure to exhaust administrative remedies is an affirmative defense."). Indeed, "[t]he failure to exhaust the union grievance procedure is an affirmative defense, not a jurisdictional bar." *Alyse v. Sprosty*, No. 06-21075-Civ, 2007 WL 4557163, at *2 (S.D. Fla. Dec. 20, 2007) (alteration added; citation omitted); *see also Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1235–36 (S.D. Fla. 2014) (collecting cases).

Treating the issue as brought under Rule 12(b)(6), a motion to dismiss may be granted on an affirmative defense, but this is only appropriate when the defense is "clearly indicated and [] appear[s] on the face of the pleading[.]" *Wells v. Brown*, 58 F.4th 1347, 1356 (11th Cir. 2023)

---

[5] Notably, the case Defendant cites to support its argument that the case should be dismissed for lack of subject matter jurisdiction does not reference union grievances. *See* Mot. 3 n.2 (citing *Swauger v. Dep't of Def. - Def. Intel. Agency*, 852 F. App'x 393, 396 (11th Cir. 2021) (citing *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999); additional citation omitted)). Defendant's characterization of the case law also ignores relevant Eleventh Circuit precedent. *See Hogan v. Sec'y, U.S. Dep't of Veterans Affs.*, 121 F.4th 172, 174 (11th Cir. 2024) ("[T]o the extent that *Crawford* indicates that a failure to timely exhaust administrative remedies is jurisdictional, it is inconsistent with [recent Supreme Court precedent.]" (alterations added; citation omitted)).

(alterations added; quotation marks and citation omitted). While Plaintiff acknowledges her status as a union member (*see* SAC ¶ 61), she makes no reference to the grievance procedures Defendant describes (*see generally id.;* Mot., Ex. 1, CBA). The defense is neither "clearly indicated" nor does it "appear on the face of the pleading," and as such, the Court will not dismiss the Second Amended Complaint on the basis that Plaintiff failed to exhaust her union remedies. *Wells*, 58 F.4th at 1356 (alterations added; quotation marks and citation omitted).

Finally, Defendant asks the Court to trust its declaration, ignoring the parties' debate regarding whether Plaintiff attempted to exhaust her union remedies. (*See* Mot. 3–5, 7–9; Mot., Ex. A, Pacheco Decl.; *see also* Resp. 2–6). For her part, Plaintiff attaches a three-page long log of the instances where she attempted to contact Defendant's agents or her own union, claiming "she tried to follow the rules by filing a grievance with the union but [] was ignored by all parties involved." (Resp. 3 (alteration added); *see also id.* 3–4 ("Plaintiff attempted to go through the collective bargaining agreement on numerous occasions but was totally ignored."); *id.* 4–6)). While litigants are required to exhaust their administrative remedies prior to bringing suit, the Court will not attempt to weed through the facts to discern the truth regarding this contested issue on this record.

***EEOC and FCHR Exhaustion.***  Defendant next argues that Plaintiff failed to exhaust her administrative remedies regarding the Second Charge she filed with the EEOC and FCHR.[6] (*See*

---

[6] Defendant briefly argues that Plaintiff failed to mention in her First Charge to the EEOC and FCHR that she was fired, potentially suggesting that this omission indicates she did not exhaust her remedies as to her First Charge, as well. (*See* Mot. 11–12). Yet, "[a] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of that charge of discrimination." *Gregory v. Ga. Dep't. of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (alteration added; quotation marks and citations omitted). A reasonable investigation into the incident Plaintiff alleges in her First Charge would have led Defendant to realize that the conduct she details is the exact conduct for which she was terminated. (*See* Mot. 4 (citation omitted)); *see also Burgos-Stefanelli v. Napolitano*, No. 9-60118-Civ, 2010 WL 785802, at *8–9 (S.D. Fla. Mar. 5, 2010) (finding similarly). As such, to the extent Defendant makes this argument, it fails to persuade.

Mot. 9–12). The Second Charge involves claims that the Court will be dismissing under Rule 12(b)(6), as described below — the retaliation and hostile work environment claims in Counts II, III, VI, and VII. Consequently, the Court does not give this argument additional consideration.

### C. Failure to State Claims

Defendant requests dismissal of all Counts for failure to state claims under Rule 12(b)(6). The Court addresses each grouping of claims, pairing each Title VII and FCRA claim brought under the same topic.[7] Upon review, the Court finds dismissal of Plaintiff's retaliation (Counts II and VI) and hostile work environment claims (Counts III and VII) warranted, as they fail to state claims upon which relief can be granted.

***Race Discrimination (Counts I and V).*** In Counts I and V, Plaintiff alleges Defendant terminated her employment because of her race, in violation of Title VII and the FCRA, respectively. (*See* SAC ¶¶ 28–45, 90–107). Defendant argues Plaintiff fails to state a race discrimination claim because she does not allege the existence of a similarly situated comparator employee outside her protected class. (*See* Mot. 15–17 (collecting cases relying on *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) (requiring identification of a similarly situated comparator outside the class as an element of its burden-shifting framework))).

Defendant well knows that plaintiffs are not required to plead a *prima facie* case under the *McDonnell Douglas* framework to state a claim for relief. *See Davis v. Miami-Dade Cnty*., No. 23-12480, 2024 WL 4051215, at *3 (11th Cir. Sept. 5, 2024) ("We've often emphasized that the analysis established in *McDonnell Douglas* is 'an evidentiary tool,' not an independent standard of liability, and certainly not a pleading standard." (citations omitted)). Certainly, a "plaintiff's

---

[7] Discrimination claims under the FCRA are governed by the same standards as Title VII claims and, therefore, do not require separate analysis. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (citations omitted).

failure to produce a comparator does not necessarily doom the plaintiff's case, even at later stages of the litigation." *Horace v. ARIA*, No. 23-12414, 2024 WL 1174398, at *6 (11th Cir. Mar. 19, 2024) (quotation marks omitted, quoting *Tynes v. Fla. Dep't of Juv. Justice*, 88 F.4th 939, 946–47 (11th Cir. 2023)).

"To state a race-discrimination claim under Title VII, a complaint need only provide enough factual matter (taken as true) to suggest intentional race discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quotation marks and citation omitted). Plaintiff alleges Defendant fired her and two other African American employees because of their race under the pretext that they failed to identify a dime-sized injury on a patient. (*See* SAC ¶¶ 28–45, 54, 90–107). Meanwhile, multiple nurses outside their protected class failed to identify injuries on patients but did not receive any disciplinary action. (*See id.* ¶¶ 38–39, 100–01). Such allegations are sufficient to support a race discrimination claim.

***National Origin (Counts IV and VIII).*** In Counts IV (Title VII) and VIII (FCRA), Plaintiff alleges she experienced discrimination based on her national origin. (*See id.* ¶¶ 77–89, 139–47). Defendant first argues that Plaintiff's national origin discrimination claims should be dismissed because she does not identify a similarly situated comparator employee outside her protected class. (*See* Mot. 15–16). This argument fails for reasons already stated. Additionally, Defendant argues that Plaintiff's national origin discrimination claims should be dismissed because she fails to state what her national origin is. (*See id.* 17).

"National origin" refers to the country where a person was born or from which their ancestors came. *See Jiann Min Chang v. Ala. Agric. & Mech. Univ.*, 355 F. App'x 250, 251–52 (11th Cir. 2009) (citation omitted). Construing the Second Amended Complaint in the light most favorable to Plaintiff, she states she is "of African American [descent]" (SAC ¶¶ 77, 139 (alteration

10

added)), while most of the employees "were not of African American descent" (*id.* ¶ 79). Other courts in this Circuit have found similar language sufficient on a motion to dismiss. *See, e.g.*, *Henry v. Univ. of S. Fla. Bd. of Trs.*, No. 09-cv-11, 2009 WL 4855518, at *4–5 (M.D. Fla. Dec. 10, 2009) (quoting *Bullard v. OMI Ga., Inc.*, 640 F.2d 632, 634 (5th Cir. 1982) ("'The line between national origin discrimination and racial discrimination is an extremely difficult one to trace.'")). Additionally, in her First Charge to the EEOC and FCHR, Plaintiff states "I was subjected to discriminatory practices because of my race and national origin (Black/African American)." (Charge of Discrimination 1, 78). As such, the Court will not dismiss Plaintiff's national origin claims on this ground.

**Retaliation (Counts II and VI).** In Counts II (Title VII) and VI (FCRA), Plaintiff alleges she experienced retaliation when Defendant terminated her employment after she reported that an African American patient died due to inadequate medical care and the emergency room staff sent patients to her floor without proper medical documentation. (*See* SAC ¶¶ 47–53, 109–15). According to Defendant, Plaintiff fails to state a plausible retaliation claim, as her reports do not constitute protected activity under Title VII. (*See* Mot. 17–19). Defendant is correct.

To state a claim for retaliation under Title VII, a plaintiff must allege that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is some causal relation between the two events. *See McMillian v. Postmaster Gen., U.S. Postal Serv.*, 634 F. App'x 274, 277 (11th Cir. 2015) (citation omitted). A "[p]rotected activity includes opposition to 'any practice made an unlawful employment practice' under Title VII[,]" which prohibits employers from discriminating against their *employees*. *Edwards v. Ambient Healthcare of Ga., Inc.*, 674 F. App'x 926, 930 (11th Cir. 2017) (alterations added; quoting 42 U.S.C. § 2000e–3(a)). Reporting alleged discrimination or wrongful treatment toward customers — or in this case,

11

patients — does not qualify as protected activity under Title VII. *See id.* (noting plaintiff's report that defendant's employee discriminated against non-employee third parties was not protected activity (citations omitted)); *see also Stimson v. Stryker Sales Corp.*, 835 F. App'x 993, 996 (11th Cir. 2020) (citations omitted); *cf. Chandler v. Volunteers of Am., N. Ala., Inc.*, No. 10-cv-2961, 2013 WL 832133, at *13 (N.D. Ala. Feb. 28, 2013) ("[The] [p]laintiff's report of [an employee] for abusing a client has nothing to do with Title VII.") (alterations added)).

Plaintiff asserts she was fired for making reports regarding the treatment of an African American patient and the lack of proper medical documentation by emergency room staff. (*See* SAC ¶¶ 47–53, 108–15). Neither of these actions is an employment activity involving employees protected by Title VII and, as a result, Plaintiff fails to state retaliation claims in Counts II and VI. *See, e.g.*, *Edwards*, 674 F. App'x at 930.

***Hostile Work Environment (Counts III and VII).*** Plaintiff also brings two hostile work environment claims, in violation of Title VII in Count III, and the FCRA in Count VII. (*See* SAC ¶¶ 60–76, 122–38). Plaintiff claims she faced harassment from upper management because she filed grievances regarding hospital misconduct. (*See id.* ¶¶ 62–73, 124–135). Defendant contends that Plaintiff's hostile work environment claims should be dismissed because her conclusory facts do not sufficiently match the severity required for such claims. (*See* Mot. 19).

To state a claim for workplace harassment under Title VII, a plaintiff must include facts showing that the harassment was severe and pervasive enough to alter the conditions of her employment and create an abusive working environment. *See Nurse v. City of Alpharetta*, 775 F. App'x 603, 607 (11th Cir. 2019) (citations omitted). In determining severity of the harassment, courts may consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether

the conduct unreasonably interferes with the employee's job performance." *Loza v. Kimpton Hotel & Rest. Grp., LLC*, No. 20-cv-21114, 2020 WL 13389302, at *5 (S.D. Fla. June 17, 2020) (quotation marks and citation omitted).

Plaintiff characterizes the alleged harassment she endured as "unwelcomed" and further states she experienced "scorn and ridicule[;]" she also felt "humiliated and embarrassed" when upper management claimed she made her floor look bad by filing complaints, putting her in fear of losing her license. (SAC ¶¶ 6:59, 64, 66–67 (alteration added), 11:59, 126, 128–129). Plaintiff, in conclusory fashion, outlines the factors a court may consider in assessing severity but fails to provide adequate factual support. (*See, e.g., id.* ¶ 134 ("The hostile work environment, and harassment was so severe and so pervasive that it altered the terms or conditions[] of the employee's employment." (alteration added))).

These vague facts and restatements of the elements fail to demonstrate that the work environment was sufficiently hostile. Courts have dismissed similar hostile work environment claims that merely recount scoldings from employers and restate elements of the claim. *See, e.g., Loza*, 2020 WL 13389302, at *6 (citations omitted). As such, Plaintiff's hostile work environment claims are dismissed.[8]

---

[8] Although Defendant does not raise this argument, Plaintiff's hostile work environment claim is deficient for the additional reason that she fails to allege the harassment was based on her race or national origin. (*See* SAC ¶¶ 66, 128 (alleging Plaintiff was "ridiculed . . . [for filing] grievances against Managers and the Director for improper conduct" (alterations added))); *see also City of Alpharetta*, 775 F. App'x at 607 (stating that a hostile work environment claim requires a plaintiff allege that "the harassment was based on his membership in the protected group" (quotation marks and citation omitted)).

CASE NO. 24-22878-CIV-ALTONAGA/Reid

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant, University of Miami's Motion to Dismiss Plaintiff's Second Amended Complaint **[ECF No. 17]** is **GRANTED in part and DENIED in part. Counts II, III, VI, and VII** of the Second Amended Complaint **[ECF No. 12]** are **DISMISSED**.  The January 23, 2025 Order **[ECF No. 27]** staying discovery is **SET ASIDE**.  The Court will issue a scheduling order separately.

**DONE AND ORDERED** in Miami, Florida, this 21st day of March, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record
      Plaintiff, *pro se*